**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff-Appellee,

v.

JUAN CARLOS ACOSTA,

　　　　Defendant-Appellant.

No. 11-2083

(D. of N.M.)

(D.C. No. CR-08-01672-MCA)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

Juan Carlos Acosta was convicted of possessing drugs while on supervised release, pursuant to 18 U.S.C. § 3583(e)(3). In his appeal, Acosta argues the district court erred in finding by a preponderance of the evidence that he constructively possessed cocaine found in the master bedroom of the apartment where he lived; and that, even if the government did meet its burden, the evidence was not sufficient to show that Acosta possessed the cocaine with an intent to distribute.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Acosta was sentenced to 217 days imprisonment or time served based on his possession of counterfeit bills of the United States in violation of 18 U.S.C. § 472. The court also ordered that a supervised release term of three years follow Acosta's prison term. As conditions of his supervised release, Acosta could not (1) commit any crimes, or (2) buy, use, possess, distribute, or administer any controlled substance.

After serving his time, Acosta reported to his probation officer that he was living at an apartment in Albuquerque, New Mexico, with his wife. At some point, officers with the Albuquerque Police Department (APD) received information that drugs were being distributed from Acosta's apartment and by Acosta himself. Based on this information, a confidential informant (CI) purchased crack cocaine from Acosta. During this transaction, Acosta was observed leaving the apartment, meeting with the CI, engaging in hand-to-hand sales, and returning to the apartment. On the basis of these hand-to-hand sales, the APD sought and received a warrant to search the apartment for narcotics.

Executing the warrant, APD officers searched the apartment and found several items of contraband. In the master bedroom, detectives found a large "rock" of crack cocaine inside of a jewelry box, and a small scale. Additionally,

they found a small amount of cocaine in a purse, which was subsequently claimed by Acosta's wife. Acosta was arrested as a result of the search.

Probation services then filed a petition for revocation of Acosta's supervised release, citing two violations. As relevant here, the petition noted:

> On October 19, 2010, the defendant was arrested by the Albuquerque Police Department. A search warrant was served as a result of several controlled narcotic purchases. A search of the defendant's apartment located a large white rock. There was also several small white rocky substances inside the bag. The white substance was field tested, which tested presumptive positive for cocaine.

R., Vol. I at 20.

A revocation hearing was held over two days in February and April 2011. At the revocation hearing, the APD detective who executed the warrant testified, along with an APD forensic chemist, the manager of the apartment complex, and Acosta's probation officer.

The district court concluded the government met its preponderance of the evidence burden, showing that Acosta had violated both of the conditions alleged in the petition. Accordingly, Acosta was sentenced to two years' imprisonment and one year of supervised release.

## II. Discussion

We review a district court's decision to revoke a term of supervised release for an abuse of discretion, and review the court's factual findings for clear error.

-3-

*United States v. Hammonds*, 370 F.3d 1032, 1034 (10th Cir. 2004). We review legal questions concerning the revocation of supervised release de novo. *United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001).

A district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Metzener*, 584 F.3d 928, 932 (10th Cir. 2009) (quoting 18 U.S.C. § 3583(e)(3)). And, as the court put it in *United States v. Waters*, 158 F.3d 933, 939 (6th Cir. 1998), a defendant on supervised release is not a "free citizen" at the time of the alleged criminal activity; rather, he is a convicted felon still serving his sentence. "A convict suspected of violating the terms of his supervised release does not stand in the same shoes as a person accused of committing a crime but not yet convicted. He does not enjoy the presumption of innocence, the right to have his guilt adjudicated beyond a reasonable doubt, or many of the procedural protections associated with a formal trial. Rather, he enjoys less procedural protection and may be punished upon a lesser showing of proof." *Id.*

## A. Constructive Possession

The petition for revocation alleged that Acosta failed to satisfy the condition requiring that he "shall not purchase, possess, use, distribute, or administer any controlled substance . . . ." R., Vol. I at 20. Specifically, the petition pointed to a "large white rock," which field tested positive for cocaine,

found during a search of Acosta's apartment as the basis for the revocation. *Id.* The district court concluded the circumstances demonstrated by a preponderance that the cocaine was Acosta's. We see no clear error in that conclusion.

Possession can be actual or constructive. *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007). "Constructive possession exists when a person knowingly holds the power and ability to exercise dominion and control over" contraband. *Id.* In joint occupancy cases, as here, "knowledge, dominion, and control may not be inferred simply by the defendant's proximity" to an item, but instead, "the government must present evidence to show some connection or nexus between the defendant and the [contraband]." *Id.* (internal quotation omitted). It is also possible for multiple occupants to constructively possess contraband; exclusive possession is not a requirement. *See, e.g.*, *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (finding that joint occupancy and nonexclusive possession can support an inference of constructive possession).

The challenge for the government was tying Acosta to the cocaine found in the apartment. There was sufficient evidence showing that Acosta was more than a casual visitor to the apartment, namely he provided the apartment's address to his parole officer as his home address, he was listed on the lease as an "occupant," and men's clothes were found in the master bedroom, where the cocaine was found in an empty jewelry box. We think the government

sufficiently associated Acosta to the apartment and the bedroom itself for the purpose of establishing proximity.

The more difficult question is whether the government sufficiently tied Acosta to the cocaine found in the jewelry box. The government points to the prior hand-to-hand drug transactions that occurred outside the apartment as sufficient evidence to create the required nexus. The parties dispute the weight placed on this evidence by the district court. While Acosta objected to its relevance and prejudice, the court allowed substantial testimony about several incidents of drug dealing from the apartment. Even so, the court ruled— ambiguously at best—that the testimony was "relevant for th[e] purpose of establishing [Acosta's] association with the apartment and for no other purpose." R., Vol. III at 68.

Whatever the correct interpretation of the ruling, the court in the end found that the evidence helped tie Acosta to the apartment, and, inferentially, to a distribution-sized package of cocaine. For instance, although Acosta made multiple objections concerning the relevance of the prior hand-to-hand transactions, the district court *overruled* each of the objections, allowing the government to build a record on these transactions. Thus, during the government's redirect examination of the officer who executed the warrant, this exchange took place:

> Government Counsel: In the course of the surveillance [prior to serving the warrant], what, if anything, did you observe regarding the Defendant, narcotics, and his activity with regard to the apartment?
>
> Acosta's Counsel: Objection, Your Honor. Relevance as to the date of alleged violation of the supervised release.
>
> The Court: How is this relevant? . . . .
>
> Government Counsel: On cross-examination, Your Honor, my sense was that the Defendant was questioning the firmity of the connection of this Defendant with that apartment . . .
>
> The Court: All right. I'll permit the question.

. . . .

> Officer: I recall there [were] three separate incidents where I observed Mr. Acosta sell suspected crack cocaine.

*Id.* at 20–24. On the basis of these transactions, the officer applied for a search warrant. Acosta's counsel again objected to the relevance of the testimony, but was again overruled. *Id.* at 25.

These prior transactions were also brought up by Acosta's counsel during his final argument as "irrelevant to the proceedings since the probation officer only alleged the violation of the drugs present in the apartment." *Id.* at 66. The district court again disagreed and countered, "[w]ouldn't that be relevant, however . . . [to establish] the association of your client to the apartment?" *Id.* Soon thereafter, the district court ruled that the hand-to-hand transactions were only allowable for the purpose of tying Acosta to the apartment. But nonetheless,

the district court went on to conclude that the government had met its burden of proving, by a preponderance of the evidence, that Acosta violated his supervised release. While the court's ruling could have been more clear, we are satisfied the court based its finding of constructive possession on admissible evidence that supported an inference that Acosta knew about, and had access to, the drugs and scale.

Our confidence is enhanced by the allegations in the original revocation petition, which stated that the "search warrant was served as a result of several controlled narcotics purchases." R., Vol. I at 20. Thus, even prior to the officer's testimony, the court was on notice of the hand-to-hand transactions completed by Acosta. *See United States v. Whalen*, 82 F.3d 528, 531 (1st Cir. 1996) (finding persuasive the "facts as set out in the Report of Revocation [prepared by the probation officer]"). The court then went on to overrule two objections by Acosta's counsel as to the relevance of these transactions, before finally limiting their scope to Acosta's connection to the apartment (and, in our view, the drugs found within).

In any event, the court's relevancy ruling appears to be limited to the fact that the revocation petition did not list *specific* details related to the prior drug sales—and that the revocation was not based on the prior sales. Instead, the record indicates that the district court was properly reviewing the totality of the facts before it, and sufficient evidence was presented for the court to understand

-8-

that the search warrant was executed on the basis of "several controlled narcotics purchases"— exactly as alleged in the revocation petition.

Ultimately, given the relaxed standard for probation revocations, it was not necessary for the specific details of the prior hand-to-hand drug transactions to be before the court for the government to meet its burden. Acosta was not on trial for the actual incidents of drug sales, but rather was merely being tried for possession with intent to distribute in the context of a supervised release violation.

In sum, the totality of the record before this court shows that the district court did not abuse its discretion in revoking Acosta's supervised release. *See also Morishita v. Morris*, 702 F.2d 207, 210 (10th Cir. 1983) (finding that even though the defendant was ultimately acquitted of the similar criminal charge, his probation revocation was still proper because "the standard of proof required . . . is only a preponderance . . . rather than proof beyond a reasonable doubt").

Our constructive possession cases support the district court's conclusion. For example, in *United States v. Scull*, 321 F.3d 1270, 1284 (10th Cir. 2003), we upheld a finding of constructive possession of drugs that were found in the *spare* bedroom of a defendant's home on the basis of a jacket found in the closet, and two pieces of evidence indicating prior drug distribution and manufacture. Similarly, in *United States v. Jenkins*, 175 F.3d 1208, 1215–17 (10th Cir. 1999), we upheld a finding of constructive possession where the drugs were found in a

co-defendant's residence and backyard on the basis that the defendant regularly spent the night and sold drugs from the house. And in *United States v. King*, 632 F.3d 646 (10th Cir. 2011), we upheld a conviction for possessing a firearm when the firearm was found in the trunk of a car owned by the defendant's girlfriend, even though there was no evidence that the defendant had ever been in the car. We concluded that "[a] reasonable jury could infer from their relationship that [the defendant] could have accessed the rifle . . . simply by asking [his girlfriend] for the key." *Id.* at 653. The gun in *King* was locked in a trunk and the defendant had to ask his girlfriend for the key to access it—but the burden was still met. Based on these cases, we cannot conclude the district court clearly erred in finding constructive possession under a preponderance of the evidence standard.

Finally, despite his wife's access to the drugs, we have held that "[a]lthough is it possible to hypothesize from circumstantial evidence that another individual may have possessed the cocaine found at the apartment, the evidence required to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir. 1991), *abrogated on other grounds by United States v. Wacker*, 72 F.3d 1453 (10th Cir. 1995).

Even if Acosta is given every benefit of the doubt, the government's case was sufficient to show joint and nonexclusive constructive possession.

### B. *Possession with Intent to Distribute*

When questioned as to what he found during the search, the officer executing the warrant responded that "[i]nside the master bedroom . . . inside a jewelry box . . . was a white rocky substance, and it was packaged in a way based on my training and experience le[d] me to believe it was an illegal narcotic." R., Vol. III at 109. "It was in a clear white plastic bag, and it was a white rocky substance and it was a pretty large substance." *Id.* at 110. The jewelry box was completely empty and there were no identifying marks as to indicate ownership. *Id.* at 17. A scale was also found in the bedroom, leading the officer to believe that Acosta was "in fact, selling crack cocaine." *Id.* at 7. Accordingly, the district court found that Acosta had committed a Grade A violation of his supervised release under United States Sentencing Guidelines § 7B1.1(a)(1). As applicable here, the government was required to prove that Acosta possessed the cocaine with the intent to distribute it.

Acosta argues the government failed to present sufficient evidence as to the quantity or other characteristics of the cocaine that would allow the court to infer that Acosta intended to distribute it. While it is true that providing a weight would have been helpful, there is no requirement to do so. The descriptions proffered by trained narcotics officers as described above, along with the detail that it was "probably the size of a ping pong ball, maybe a little smaller," is

-11-

sufficient under a preponderance standard to show that this was not simply for personal use.  R., Vol. III at 7.

In addition, as discussed above, the revocation petition noted that the search warrant was served after several hand-to-hand transactions, leading to the inescapable conclusion that narcotics were being distributed from the apartment. An experienced judicial fact-finder could, and did, determine that this was more than a de minimis amount of cocaine, simply based on the descriptions in the record.

Additionally, Acosta argues that the scale found during the search should not be considered as corroborating evidence for the purpose of determining an intent to distribute.  Acosta cites *United States v. Skipper*, 74 F.3d 608, 611 (5th Cir. 1996), for the proposition that "[p]araphernalia that could be consistent with personal use does not provide a sound basis for inferring intent to distribute." But in *Skipper*, the government presented evidence of a razor *and the absence of* smoking paraphernalia to suggest an intent to distribute.  *Id.*  Building a case *by omission* is much more difficult than building one based on the presence of material that is necessary for distribution—here, the scale.

The evidence submitted by the government in favor of showing Acosta's intent to distribute meets the required preponderance standard.

# III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge