**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

HERNANDO AGUILAR-
BANUELOS,

      Defendant-Appellant.

No. 18-1133
(D.C. No. 1:16-CR-00306-RBJ-4)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Mr. Hernando Aguilar-Banuelos was convicted of aiding and abetting

a kidnapping. _See_ 18 U.S.C. §§ 2, 1201(a)(1).[1] He appeals, challenging the

sufficiency of the evidence. We affirm in light of the government's

---

[*]    The parties do not request oral argument, and it would not materially aid our consideration of the appeal. We thus have decided the appeal based on the briefs. _See_ Fed. R. App. P. 34(a)(2); Tenth Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But our order and judgment may be cited for its persuasive value if otherwise appropriate. _See_ Fed. R. App. P. 32.1(a); Tenth Cir. R. 32.1(A).

[1]    He was acquitted of conspiring to kidnap and receiving ransom money.

evidence that Mr. Aguilar-Banuelos intentionally assisted in the kidnapping.

**1.    Three men carry out the kidnapping.**

Three men planned a kidnapping and asked Mr. Aguilar-Banuelos to keep the victim at his apartment. Mr. Aguilar-Banuelos declined, but he let the kidnappers use his apartment to keep the victim. During the actual kidnapping, Mr. Aguilar-Banuelos stayed at a motel. The kidnappers paid for the motel room and promised to give Mr. Aguilar-Banuelos $300, to pay one month's rent for his apartment, and to give him a handgun.

The kidnapping took place as planned, and the kidnappers obtained cell phones to use in communicating about the ransom. The victim was taken to Mr. Aguilar-Banuelos's apartment, and Mr. Aguilar-Banuelos helped the kidnappers activate their cell phones.

The kidnappers then took Mr. Aguilar-Banuelos to the motel, where he stayed for three nights while the kidnappers sought to collect the ransom. After three nights, the kidnappers collected the ransom, returned the victim to his family, and drove Mr. Aguilar-Banuelos to his apartment.

**2.    We conduct de novo review over the sufficiency of the evidence.**

The threshold issue involves our standard of review. The government contends that we should apply the plain-error standard because Mr. Aguilar-Banuelos presented a different argument in district court.

2

We assume for the sake of argument that Mr. Aguilar-Banuelos preserved his present theory. Given this assumption, we engage in de novo review. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). In conducting de novo review, we view the evidence in the light most favorable to the government and ask whether a reasonable jury could find Mr. Aguilar-Banuelos guilty beyond a reasonable doubt. *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011). This inquiry does not permit us to gauge the witnesses' credibility. *Id.* We can reverse only if the jury could not rationally find each element of the crime. *Id.*

**3.     The evidence was sufficient to convict of aiding and abetting.**

The conviction involved aiding and abetting a kidnapping. A kidnapping takes place when the defendant holds someone against his or her will for the defendant's benefit. *United States v. Gabaldon*, 389 F.3d 1090, 1094 (10th Cir. 2004). The defendant could incur guilt for aiding and abetting the kidnapping if he aided the kidnappers in relation to one or more of the crime's phases or elements. *Rosemond v. United States*, 572 U.S. 65, 71 (2014).

Mr. Aguilar-Banuelos points to evidence that he declined some of the kidnappers' requests. For example, he states that

- he declined an offer to participate in the kidnapping in exchange for $25,000 to $30,000,

3

- he left the apartment "to separate himself from the kidnapping" (Appellant's Opening Br. at 12), and

- he was merely subletting the apartment.[2]

But the jury could reasonably have found participation based on Mr. Aguilar-Banuelos's actions and his statements to the police afterward.

Though Mr. Aguilar-Banuelos was absent for the actual abduction and concealment of the victim, the government presented evidence that Mr. Aguilar-Banuelos had attended a planning meeting at his apartment, let the kidnappers use his apartment to keep the victim, helped the kidnappers activate the cell phones that they later used to demand the ransom, told the kidnappers where they could get the security uniforms later worn during the abduction, and asked one of the kidnappers when the "fiesta" (code word for the kidnapping) would happen so that he'd know when to leave the apartment. For his efforts, Mr. Aguilar-Banuelos was paid and given a handgun.

The government also presented evidence that after the kidnapping, Mr. Aguilar-Banuelos told law enforcement officials that he had informed the kidnappers where they could get security uniforms, had obtained ammunition for the handgun that he had been promised, had been promised

---

[2]    In district court, Mr. Aguilar-Banuelos denied that he'd wanted the kidnappers to succeed. But if he chose to help the kidnappers with knowledge of their scheme, the intent element would be satisfied even if he privately hoped that the kidnapping would fail. *Rosemond v. United States*, 572 U.S. 65, 79–80 (2014).

money for his rent, had been given additional money to pay another participant involved in the kidnapping, had been given cash for the motel room, and had accompanied the kidnappers to the motel.

Mr. Aguilar-Banuelos's arguments do little to undermine the government's evidence of his participation in the kidnapping. He declined a bigger offer for greater involvement, but he unquestionably helped the kidnappers. For example, Mr. Aguilar-Banuelos let the kidnappers use his apartment to keep the victim while they arranged for the ransom.

Mr. Aguilar-Banuelos downplays this help, pointing out that he was merely subletting the apartment. As a sublessor, however, he let the kidnappers use the apartment. The jury could reasonably find that Mr. Aguilar-Banuelos had known that he was helping the kidnappers regardless of whether he was leasing or subleasing the apartment.

The combination of evidence permitted a reasonable finding that Mr. Aguilar-Banuelos had aided and abetted the kidnapping. We thus conclude that the evidence was sufficient to support the conviction.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge

5