**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 3, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

STANLEY JONES,

      Defendant-Appellant.

No. 13-8093

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:13-CR-00126-ABJ-1)**

---

Submitted on the briefs:

Christopher A. Crofts, United States Attorney (Kerry J. Jacobson, Assistant United States Attorney, with him on the brief), Lander, Wyoming, for Plaintiff-Appellee.

Stanley Jones, pro se.

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

**BRORBY**, Senior Circuit Judge.

---

Appellant Stanley Jones appeals his convictions for one count of unlawful use or occupation of public lands, in violation of 43 C.F.R. § 2920.1-2(a) and (e), and two counts of allowing his livestock to graze without authorization on public lands, in violation of 43 C.F.R. § 4140.1(b)(1)(i).[1] Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm his convictions.[2]

## I. Factual and Procedural Background

The Bureau of Land Management (BLM), through its field office in Worland, Wyoming, manages more than 2.5 million acres of land. The BLM grants grazing permits to private individuals who own land adjacent to public lands; these adjacent, private lands are called "base properties." According to the BLM, its permit system prevents overgrazing of such lands and gives certainty to livestock operators on annual forage available for their operations. Grazing permits limit both the number of animals grazing on a specific allotment of public land and the number of days they are permitted to graze.

---

[1] The Ninth Circuit Court of Appeals has imposed an injunction on certain revised regulations, including § 4140.1, based on its determination the BLM failed to take a hard look at certain environmental consequences or consult with the Fish and Wildlife Service. *See Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 491-500 (9ᵗʰ Cir. 2011). However, its ruling does not apply in this jurisdiction for the purpose of addressing the convictions against Mr. Jones for unlawful grazing.

[2] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

While Mr. Jones owns cattle in Wyoming, he is not the owner of the base properties adjacent to the two BLM public lands or allotments involved in the instant litigation. Instead, his brother owns certain base properties adjacent to the Sandstone and Cannady allotments. However, during the periods at issue, no grazing permit has been issued to Mr. Jones or his brother, nor has Mr. Jones leased his brother's property, as required for obtaining such a permit.

After issuing Mr. Jones multiple administrative trespass notices and fines over the years for grazing his cattle on these and other allotments without a permit, the BLM, through the United States Attorney's Office for Wyoming, brought criminal charges against him, including one count of unlawful use or occupation of public lands, in violation of 43 C.F.R. § 2920.1-2(a) and (e) and two counts of allowing his livestock to graze without authorization on public lands, in violation of 43 C.F.R. § 4140.1(b)(1)(i). Mr. Jones pled not guilty to all counts and requested and received a federal jury trial. On September 19, 2013, a jury convicted Mr. Jones of all three criminal counts, and thereafter, the district court sentenced him to two years of supervised probation for each count, to be served concurrently, together with a $3,000 fine, contingent on his compliance with certain terms and conditions, and a $75 special assessment.

## II. Discussion

Mr. Jones, appearing pro se, appeals his convictions, contending the handling of the district court proceeding caused the jury to come to the wrong

conclusion and that the true and honest facts should be considered, which the government suggests, and we agree, constitutes a claim that insufficient evidence supports his convictions. Mr. Jones also contends: 1) the district court improperly granted the government's motion in limine and excluded his witness from testifying, thereby depriving him of a fair trial; and 2) the proceedings against him were fundamentally unfair and denied him due process for a multitude of reasons.

## A. Sufficiency of the Evidence

During the jury trial, the government provided witness testimony and other evidence, including photographs, establishing the following facts. Mr. Jones is, and always has been, a non-permittee, never: 1) owning any property eligible for a BLM grazing permit; 2) possessing a BLM grazing permit; or 3) holding any official status with the BLM. Despite his lack of authorization, Mr. Jones has nevertheless grazed his cattle on BLM lands since the early 1990s. In the beginning, the BLM issued him administrative trespass notices resulting in fines, and, based on his persistent and continuing violations over the years, it gave him a grade designation of a "repeated willful" violator.

A BLM law enforcement ranger, Aaron Kania, documented and provided testimony with respect to approximately twenty instances in which Mr. Jones's cattle grazed on public lands between January 2010 and May 2013, including instances involving the two allotments and convictions at issue. On February 6,

2010, he warned Mr. Jones his next grazing trespass would result in a citation and later, on February 10, 2010, cited him for a grazing violation.[3] Even though Ranger Kania saw Mr. Jones's cattle grazing on public lands on several occasions thereafter, he declined to cite him, giving him an opportunity to rectify the problem. On May 18, 2011, Ranger Kania met with Mr. Jones to clarify the public land boundary line for the Cannady allotment, and they came to a general agreement on the boundary's location. However, only one month later, on June 11, 2011, Ranger Kania saw forty-one head of Mr. Jones's cattle grazing on the allotment. When Ranger Kania questioned Mr. Jones about the violation, he claimed it resulted from a hunter leaving a gate open and further stated he had authorization for his cattle to be on the Cannady allotment. Ranger Kania followed up on that claim and verified Mr. Jones had no such authorization. He also testified that even if a hunter left the gate open, the land on either side of the gate is public land, so that Mr. Jones's cattle were unlawfully grazing on public lands when they passed through the gate. Based on this incident, a criminal charge was brought against Mr. Jones for allowing his livestock to graze without authorization on public lands.

Thereafter, Ranger Kania continued to observe Mr. Jones's cattle on public

---

[3] While the government contends Mr. Jones was advised in February 2010 that any future grazing trespasses would be handled criminally, rather than administratively, we are unable to locate that testimony in the record and therefore do not rely on it in disposing of this appeal.

lands, and, on April 21, 2013, he observed thirty-six head of his cattle grazing on the Sandstone allotment without authorization; he also found tire marks around the cattle identical to those made by the dual-wheeled vehicle Mr. Jones uses to check his cattle and also testified no one else in the area uses this type of dual-wheeled vehicle. One week later, on April 28, 2013, he observed twenty-six head of cattle continuing to unlawfully graze on the allotment and noticed that the gate, located between the private land Mr. Jones uses and the public Sandstone allotment, was closed, causing the cattle to be confined to the allotment. A few days later, on May 8, 2013, he observed twelve of Mr. Jones's cattle continuing to illegally graze on the Sandstone allotment. This unauthorized grazing incident resulted in the second criminal charge of unauthorized grazing against Mr. Jones.

In addition to Ranger Kania's testimony, the government offered the corroborating testimony of three neighbors, including two ranchers, with respect to Mr. Jones's grazing violations. They testified that for many years, up until the time of the trial, they had problems with Mr. Jones's cattle trespassing on their property, had seen his cattle on the public lands in question, and knew his cattle crossed public lands to get onto their private lands. The government also provided the testimony of a state brand inspector who testified Mr. Jones owns several breeds of cattle, including distinctive British Whites, which no one else in the area owns, and that some of his cattle were branded, while others were not. He also testified he previously found and identified Mr. Jones's cattle grazing on

BLM lands on three occasions in 2012 and 2013 and that Mr. Jones did not deny the cattle belonged to him.

With regard to the third count concerning Mr. Jones's unlawful use or occupation of public lands, in violation of 43 C.F.R. § 2920.1-2(a) and (e), the government again offered the testimony of Ranger Kania. According to him, on April 16, 2011, he discovered lumber, farm equipment, vehicles, and fencing material on the Cannady allotment near the land used by Mr. Jones. He traced the licence plate on one of the vehicles to Mr. Jones. A BLM realty specialist, Carol Sheaff, contacted Mr. Jones over the matter and he stated he was unfamiliar with the property in question. As a result, on May 18, 2011, Ranger Kania met with Mr. Jones and drove him to the area; at that time, Mr. Jones stated he thought the land belonged to his brother. When Ranger Kania used his computer and GPS software to show him they were on public property, Mr. Jones stated he would remove the items located there.

Ms. Sheaff testified she later sent Mr. Jones a letter informing him he had sixty days to remove the personal property or he would receive a trespass notice. On receipt, Mr. Jones called her asking if he could buy the property or make some other arrangement; she advised he could apply for a land use permit. Mr. Jones never applied for a land use permit or removed the personal property, including the vehicle with his license plate, from the allotment. He was subsequently charged with unlawful use of public lands.

Mr. Jones did not testify or provide relevant, exculpatory evidence to contradict the evidence offered by the government. He nevertheless appeals his three convictions on grounds the jury came to the wrong conclusion without true or honest facts, which we view as a sufficiency of the evidence argument.

We review de novo the sufficiency of the evidence to support a jury's verdict, *United States v. Vigil*, 523 F.3d 1258, 1262 (10th Cir. 2008), giving considerable deference to that verdict. *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011). In conducting our de novo inquiry, we ask "whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

In making our inquiry, we do not "weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." *Id.* (internal quotation marks omitted). Instead, we "simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (internal quotation marks omitted). Thus, we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See King*, 632 F.3d at 650.

To prove the elements for *unauthorized grazing on public lands*, the

government must prove a defendant allowed livestock, or other privately-owned or controlled animals, to graze on or be driven across public lands without a permit, lease, or other grazing or use authorization and timely payment of grazing fees. *See* 43 C.F.R. § 4140.1(b)(1)(i). This provision provides that persons performing such a prohibited act on BLM-administered lands are subject to civil and criminal penalties. *See id.* at § 4140.1(b). In turn, to meet the elements for *unlawful use of public lands*, the government must prove the defendant knowingly and willfully used or occupied it without authorization. *See* 43 C.F.R. § 2920.1-2(a). This provision also provides for criminal penalties, including imprisonment of not more than twelve months. *Id.* at § 2920.1-2(e). In conjunction with the regulations, the instructions provided to the jury at trial required a finding Mr. Jones knowingly and willfully allowed his livestock to graze on or be driven across public lands without authorization and that Mr. Jones knowingly and willfully used or occupied public lands without authorization.

In this case, the government offered overwhelming evidence to support Mr. Jones's two convictions for unauthorized grazing on public lands. First, the testimony of the neighboring ranchers and the state brand inspector corroborated Ranger Kania's testimony regarding Mr. Jones's longstanding history of allowing his cattle to graze without authorization on public lands. With respect to the Cannady allotment, Ranger Kania's testimony further established Mr. Jones was aware of the public land boundary line for that allotment but nevertheless allowed

his cattle to graze on that allotment without authorization. Not only did Mr. Jones not have authorization, but the question of whether or not a hunter left the gate open was shown to be immaterial. Viewing this testimony, which the jury clearly credited, in the light most favorable to the government, it is evident a reasonable jury could find Mr. Jones guilty beyond a reasonable doubt of allowing his livestock to graze on this allotment without the requisite authorization, in violation of 43 C.F.R. § 4140.1(b)(1)(i). Similarly, with respect to the Sandstone allotment, evidence also established Mr. Jones allowed his cattle to graze on public lands without authorization. This is supported by the fact a noticeably large number of cattle grazed for a period of well over a week on the allotment adjacent to the private land used by Mr. Jones, where tire marks from a dual-wheeled vehicle were found, and the gate was closed, causing the large herd of cattle to be contained on the public land for a long period of time. Again, the jury clearly credited the testimony supporting these facts, and a reasonable jury could find Mr. Jones guilty beyond a reasonable doubt of allowing his livestock to graze on that allotment without the requisite authorization, in violation of 43 C.F.R. § 4140.1(b)(1)(i).

Having addressed the two convictions for unauthorized grazing, we turn to Mr. Jones's conviction for unauthorized use of public lands. The government's evidence established lumber, farm equipment, vehicles, and fencing material were left on the Cannady allotment, including a vehicle with licence plates registered

to Mr. Jones. The evidence also established Mr. Jones was aware this personal property was on public lands and stated he would remove it. Even though Mr. Jones was advised he had sixty days to remove the personal property or could apply for a land use permit, Mr. Jones never applied for such a permit or removed the personal property, including his vehicle, from the allotment. In convicting Mr. Jones of unauthorized use of public lands, it is again clear the jury credited both the testimony of Ranger Kania and Ms. Sheaff in determining the government met its burden of showing Mr. Jones knowingly and willfully used or occupied the Cannady allotment without authorization, in violation of 43 C.F.R. § 2920.1-2(a) and (e). For these reasons, Mr. Jones's appeal does not support his claim that insufficient evidence supports his convictions.

### B. Motion in Limine and Exclusion of Witness

During the trial, the district court granted the government's motion in limine, prohibiting Mr. Jones from presenting evidence involving his allegation the federal government should comply with Wyoming's fence-out laws. Nonetheless, Mr. Jones attempted to proffer the testimony of the sheriff of Big Horn County, Wyoming, for the sole purpose of showing the sheriff's support of his stance that Wyoming's fence-out law should be applied to force the BLM to build fences. The district court excluded the sheriff's testimony on grounds it would be: 1) in direct contravention with its ruling on the motion in limine concerning the relevancy and materiality of such evidence, and 2) prejudicial and

confusing to the jury.  Mr. Jones now appeals this ruling on grounds the district court improperly granted the motion in limine and excluded his witness from testifying, thereby depriving him of a fair trial.  The government claims the testimony was properly excluded as irrelevant and prejudicial and that federal law requires adjacent landowners to acquire a grazing permit or otherwise fence in their livestock to keep cattle off of public lands.

We generally review a district court's decision to exclude evidence for abuse of discretion.[4]  *See United States v. Spence*, 721 F.3d 1224, 1227-28 (10th Cir.), *cert. denied*, 134 S. Ct. 660 (2013).  While a defendant's right to present a defense, including witnesses, is rooted in the Constitution, this right is not without limits.  *Id.* at 1228.  Instead, presentation of such evidence is constrained by relevancy and materiality.  *Id.*  Evidence is "relevant" if it tends to make a material fact "more probable or less probable than it would be without the evidence."  *United States v. Condrin*, 473 F.3d 1283, 1285 (10th Cir. 2007) (quoting Fed. R. Evid. 401).  Whether a fact is "material" is determined by the substantive law which governs the action.  *See United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986).  As previously noted, the substantive law here regards the elements for proving unauthorized use or occupation and unauthorized grazing under 43 C.F.R. § 4140.1(b)(1)(i) and 43 C.F.R. § 2920.1-2(a) and (e).

---

[4]  While the government contends the standard of review in this case is for "plain error," we note that under either standard of review, Mr. Jones cannot prevail.

With regard to Mr. Jones's argument on whether state fence-out laws apply to the BLM's public lands, the Supreme Court has determined the government is no different than a private land owner entitled to protection against willful trespass, regardless of whether the public land is located in a state with fence-out laws. *See Light v. United States*, 220 U.S. 523, 537-38 (1911) (holding Colorado fence-out law did not apply to federal forest land where trespass of cattle on such land was willful rather than unintentional). *See also Shannon v. United States*, 160 F. 870, 876 (9th Cir. 1908) (same with regard to Montana fence-out law and intentional trespass on forest land). In addition, it is generally understood and accepted that Congress has authority to regulate public lands, *see Kleppe v. New Mexico*, 426 U.S. 529, 535 (1976), and while the states retain general police powers over public lands within their borders, the Supreme Court has held the Property Clause gives Congress power over public lands "to control their occupancy and use, to protect them from trespass and injury, and to prescribe the condition upon which others may obtain rights in them." *Id.* at 540 (internal quotation marks omitted). Based on this authority, the Department of the Interior, through the BLM, has implemented the regulations at issue, providing civil and criminal penalties.

Because Mr. Jones has not provided any statute, regulation, or other case law suggesting such substantive federal law does not apply, he has failed to show the issue of the state fence-out law is relevant or material to the criminal charges

-13-

brought against him.  Similarly, the opinion of the local sheriff as to whether he believes Wyoming's fence-out laws should apply is also irrelevant, as it was not offered for the purpose of showing whether Mr. Jones allowed his cattle to graze on public lands without authorization or knowingly and willfully used or occupied such land, as prohibited by federal regulation, or in conjunction with any other substantive federal law.  While Mr. Jones complains another state employee–the branding inspector–was allowed to testify, the inspector testified on Mr. Jones's history of unauthorized grazing, which was germane to the issues at hand, and not on his opinion as to the application of the state's fence-out law.  For these reasons, we conclude the district court did not abuse its discretion in ruling such evidence was irrelevant and inadmissible under Rule 402 of the Federal Rules of Evidence.

Even if the sheriff's testimony was somehow relevant, the district court alternatively determined such evidence would prove prejudicial and confusing to the jury.  We agree.  Rule 403 of the Federal Rules of Evidence allows a court to exclude relevant evidence if its probative value is substantially outweighed, in part, by the danger of confusing the issues or misleading a jury.  *See* Fed. R. Evid. 403.  Here, the mere opinion of a law enforcement officer that Wyoming's fence-out law should apply would most likely have confused and misled the jury, keeping them from concentrating on the applicable law or criminal elements required to convict or acquit Mr. Jones.  Moreover, because overwhelming and

-14-

uncontroverted evidence established Mr. Jones's guilt of the crimes charged, we conclude the exclusion of such testimony did not affect the fundamental fairness of his trial, as Mr. Jones claims on appeal.

### C. Due Process and Fundamental Fairness

Mr. Jones contends, without sufficient argument or legal authority, that he was denied procedural due process and fundamental fairness based on certain defects in the proceedings against him, including: 1) the district court's lack of jurisdiction and failure to issue a summons bearing the court's seal; 2) failure of the government to exhaust administrative processes prior to filing the charges against him; 3) the government's delay in bringing one count against him; and 4) the government's failure to obtain written permission from the Secretary of the Interior to prosecute him. He suggests these defects resulted in a "mockery of justice."

We have held perfunctory or cursory reference to issues unaccompanied by some effort at developed argument are inadequate to warrant consideration, *see United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002), and we generally will not address issues not supported by citation to legal authority*, see MacArthur v. San Juan County*, 495 F.3d 1157, 1160-61 (10th Cir. 2007). However, even if we did consider Mr. Jones's claims, they lack merit and therefore are frivolous. This is a criminal case and not a deprivation of property or administrative case. Procedural due process is violated in criminal cases when the government

-15-

deprives a person of life or liberty without the requisite procedural safeguards. *See United States v. Salerno*, 481 U.S. 739, 747 (1987). The Supreme Court has consistently held procedural due process requires notice and a meaningful opportunity to be heard. *See LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

In this case, the charges against Mr. Jones were fully contained in an information filed on May 31, 2013. His initial appearance was set for July 10, 2013, and the court issued a summons on June 7, 2013, sent to him by certified and regular mail on that date and summoning him to appear. Mr. Jones presented himself on July 10, 2013, as provided for in the summons, and requested a jury trial before an Article III judge, at which time a jury trial was scheduled before the federal district court on September 17, 2013. Mr. Jones appeared for trial on that date, at which time a motion hearing was held in which he participated. The record also shows that over the three days of the trial, Mr. Jones participated in jury selection, cross-examination of witnesses, and objections to evidence and points of law with which he disagreed, and also presented argument to the jury and judge in his defense, even though he elected not to testify in his own defense.

Mr. Jones's appearance and participation at all hearings and the trial clearly indicates he was afforded notice and an opportunity to be heard for the purpose of meeting the requirements for procedural due process in his criminal litigation. Whether the summons issued to him bore the court's seal had no impact on the

-16-

notice requirement or his opportunity to be heard in light of his presence at his initial appearance hearing, motions hearing, and trial. Mr. Jones does not claim he did not receive the court's notice.

As to his claim an administrative process or proceeding was required, this case involves a criminal, not administrative, proceeding in which Mr. Jones received three convictions. We are not privy to any required "administrative" process or proceeding for the purpose of filing criminal charges against him, nor has Mr. Jones established any requirement for such an administrative process or proceeding, especially for a non-landowner or non-permittee charged with unauthorized use and grazing on public lands. To the extent Mr. Jones is claiming he received no notice that a grazing violation would result in a criminal charge, he has not shown such notice was required.

Equally without merit is Mr. Jones's claim the Secretary of the Interior's written approval is required to bring criminal charges. Nothing in the charges under which Mr. Jones was convicted requires such protocol nor has he shown otherwise. Rather, Mr. Jones relies on 43 U.S.C. § 1066, which is immaterial to this case as it pertains to the removal of unlawful inclosures rather than the criminal charges brought against him by the United States Attorney. In addition, Mr. Jones elected to go to trial in the federal district court, which clearly has jurisdiction over this matter pursuant to 18 U.S.C. § 3231, stating, "the district courts of the United States shall have original jurisdiction ... of all offenses

against the laws of the United States." Finally, Mr. Jones has not provided any argument or support for his claim of delay in bringing any of the counts against him. For these reasons, Mr. Jones has not shown a violation of his procedural due process rights or otherwise raised any issue of merit.

### III. Conclusion.

For the foregoing reasons, we **AFFIRM** Mr. Jones's convictions. Mr. Jones's motion to proceed on appeal in forma pauperis is **GRANTED.**