**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

—————————————————

DANIEL PETERSON,

    Plaintiff - Appellant,

v.

MINERVA SURGICAL, INC.;
DAVID CLAPPER,

    Defendants - Appellees.

No. 24-3003
(D.C. No. 2:19-CV-02050-KHV-TJJ)
(D. Kan.)

—————————————————

## ORDER AND JUDGMENT[*]

—————————————————

Before **BACHARACH**, **EID**, and **FEDERICO**, Circuit Judges.

—————————————————

Daniel Peterson, pro se, appeals the district court's denial of his motion to vacate an arbitration award and its order confirming that award. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(D) and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I

Defendant Minerva Surgical, Inc., is a medical device manufacturer headquartered in California. Peterson worked for Minerva as a sales representative in Kansas from 2015 to 2018, when he either resigned or was forced out. Peterson believed he was unlawfully forced out.

Peterson's employment contract required arbitration to resolve disputes, so he filed an arbitration demand against Minerva.[1] He claimed, among other things, that Minerva violated California Labor Code § 1102.5(b), which prohibits employers from retaliating against employees based on whistleblowing activities. Minerva, for its part, filed a counterclaim alleging Peterson breached his employment contract when, after the end of his employment, he kept a copy of Minerva's trade secrets.

The arbitrator held a five-day hearing in May 2023. Following the hearing, the arbitrator entered an award that summarized his factual findings and legal conclusions.

## A

The following findings of fact made by the arbitrator are most relevant to this appeal. Although Peterson disagrees with some of them, we do not

---

[1] Peterson's demand named David Clapper, Minerva's CEO, as a defendant. In this lawsuit he likewise names Clapper as a defendant. No party has explained why Clapper is a proper party independent from Minerva, so we will refer exclusively to Minerva.

have discretion to overturn them. *See Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) ("Errors in . . . the arbitrator's factual findings . . . do not justify review or reversal on the merits of the controversy.").

Minerva makes endometrial ablation devices used to treat heavy menstrual bleeding. Minerva's original device received FDA approval in 2015 or thereabouts. Minerva recruited Peterson that same year to be a sales representative.

By 2016, Minerva had received reports of injuries allegedly caused by its device or by doctors not using the device correctly.[2] By 2017, it had developed, patented, and received FDA approval for a modified device designed to prevent those injuries.

When the modified device became available, doctors told Peterson and other sales personnel that they wanted to exchange their original devices for the modified version, but Minerva generally would not permit this. When Peterson and other sales personnel emailed Minerva executives about doctors' safety concerns with the original devices, Minerva executives criticized them for putting safety concerns in writing.

---

[2] Minerva's internal documents showed an injury rate of 0.079%, or one injury for every 1,269 procedures.

3

On April 17, 2018, Peterson emailed three top Minerva executives asserting they had retaliated against him and otherwise mistreated him based on his advocacy for allowing doctors to exchange the original devices for the modified versions.[3] He again advocated for allowing an exchange, pointing to the incidence of injury.

Minutes later, Peterson emailed a request for a leave of absence based on personal medical challenges. Minerva granted that leave. Over the next few months, Peterson (sometimes through his attorney) and Minerva (sometimes through its attorneys) exchanged many emails—Peterson insisted on written communication only—about the nature and severity of Peterson's disability and whether Minerva could accommodate it. In early September 2018, he announced to Minerva that he would provide no more information about his disability, and he was no longer a Minerva employee.

Minerva treated this announcement from Peterson as a resignation, which it accepted. Peterson's employment contract then obligated him to return all Minerva property, including confidential information. Sometime later, Minerva discovered that Peterson had nonetheless retained a hard drive containing thousands of Minerva documents, including trade secrets.

---

[3] This email is not in the record (as opposed to the arbitrator's brief summary of it), so it is unclear what alleged retaliation or mistreatment Peterson was referring to.

4

Minerva hired a computer forensics expert to analyze the data on that hard drive, which Peterson still possessed as of the arbitration hearing. Minerva paid the expert more than $7,000 for his services.

**B**

The arbitrator concluded Peterson's California whistleblower claim failed because:

- He had not proven protected activity, *i.e.*, advocating for swapping the original devices for the modified devices based on genuine safety concerns, as opposed to concerns about keeping customers satisfied.

- He had not proven that he suffered an adverse employment action. Specifically, he had not proven that his months-long email exchange about disability was a sham process intended to force him to resign.

- Even if he had proven the foregoing two elements, he had not proven that his reports of safety concerns were a substantial motivating reason in Minerva's alleged scheme to force him to resign.

As for Minerva's contract counterclaim, the arbitrator found Peterson's retention of trade secrets qualified as a breach and he awarded damages in the amount of the fee Minerva paid to the computer forensics expert, about $7,000. The arbitrator further awarded Minerva $190,000 in fees and about $1,500 in costs based on a fee-shifting clause in Peterson's employment contract. Finally, the arbitrator ordered Peterson to return Minerva's documents.

## II

Peterson, now pro se, moved in the United States District Court for the District of Kansas to set aside the arbitration award. *See* 9 U.S.C. § 10(a). Minerva opposed and cross-moved for confirmation. *See id.* § 9. The district court denied Peterson's motion, granted Minerva's cross-motion, and entered final judgment consistent with the arbitrator's award. Peterson now timely appeals.

## III

"We review a district court's order to vacate or enforce an arbitration award de novo." *Dish Network LLC v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018) ("*Ray*"). A federal court's ability to vacate an arbitration award is extremely limited. *See id.* (summarizing the possible justifications for vacatur). Indeed, "the standard of review of arbitral awards 'is among the narrowest known to the law.'" *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (internal quotation marks omitted). We will

discuss below the possible justifications for vacatur, as they become relevant to Peterson's arguments.[4]

## A

### 1

As noted, the arbitrator concluded Peterson's whistleblower retaliation claim failed in part because he failed to show protected activity. The arbitrator believed Peterson's safety complaints were profit-motivated, not genuinely safety-motivated. One reason the arbitrator gave in support of this interpretation of the evidence was that "the original device had never been deemed unsafe by the FDA or subject to recall." R. at 235. Peterson claims the arbitrator was misled by Minerva's witnesses' testimony that the original device was still safe, in contrast to evidence he introduced that the original device was unsafe. Peterson therefore claims "the [arbitration] award was procured by . . . fraud," 9 U.S.C. § 10(a)(1), which is one justification for this court to vacate an arbitration award.

---

[4] We decline to consider one of Peterson's main arguments. The district court denied Peterson's motion to vacate because he had not followed a District of Kansas local rule governing the length and content of motions. Peterson says this was error, but the district court also provided a complete alternative analysis on the merits. We likewise focus on the merits, so even if the district court made a procedural error, any such error is harmless. *See* Fed. R. Civ. P. 61 (requiring courts to disregard harmless error).

Minerva says the arbitrator never made a finding that the device was either safe or unsafe. For argument's sake, we will accept Peterson's interpretation that the arbitrator concluded the original device was safe. We will further assume this was an important part of the arbitrator's further conclusion that Peterson did not genuinely believe the product was unsafe. Still, the first conclusion—the original device was safe—is not the product of fraud. It is merely the resolution of a factual dispute. The arbitrator had before him all the evidence Peterson now offers to show the original product was unsafe. The arbitrator resolved the factual issue against Peterson.

As we have already stated, federal courts do not have power to review an arbitrator's factual findings. *See Denver & Rio Grande*, 119 F.3d at 849. Because it is a veiled attempt to have us review the arbitrator's finding of fact, we reject Peterson's fraud theory.

**2**

During the arbitration, Peterson pursued multiple retaliation claims, such as a California whistleblower retaliation claim,  retaliating against a person who requests a disability accommodation in violation of California law, and retaliating in violation of Kansas common law. Analyzing all of Peterson's retaliation claims together, the arbitrator set forth a five-element test Peterson needed to satisfy in order to prevail. One of those

elements was that "the protected activity was a substantial motivating reason for the adverse employment action." R. at 235. Peterson argues this was error because his California whistleblower claim only requires him to prove that his protected activity "was a contributing factor in the alleged prohibited action against the employee," Cal. Lab. Code § 1102.6, not a substantial motivating reason.

A federal court cannot set aside an arbitration award based on legal error unless it amounts to "a manifest disregard of the law, defined as willful inattentiveness to the governing law." *Ray*, 900 F.3d at 1243 (internal quotation marks omitted). Peterson believes he satisfies this standard because the arbitrator's supporting citation for the five-element retaliation test was as follows: "CACI 2505 and 4603; no citations to Kansas law were provided but basic research supports that the California standards are universal." R. at 235 n.2. CACI 2505 is the California pattern jury instruction for Peterson's disability-based retaliation claim. It uses the "substantial motivating reason" formulation. CACI 4603 is the pattern instruction for Peterson's whistleblower-based retaliation claim, and it uses the "contributing factor" formulation. Thus, according to Peterson, the arbitrator manifestly disregarded the law because it is clear the arbitrator looked at the law and saw the two differing standards, but he chose to apply the inapplicable standard.

9

We are not persuaded. In our reading, any error resulted from the initial choice to treat all retaliation claims as equivalent—further evidenced by the arbitrator's statement about "basic research" showing that "California standards are universal," R. at 235 n.2. Even if it was a misapplication of California law, we are not convinced it was "willful inattentiveness," *Ray*, 900 F.3d at 1243 (internal quotation marks omitted). We therefore reject this argument.

**3**

We may also vacate an arbitration award "when [it] violates public policy." *Id.* Peterson claims the arbitrator's denial of his whistleblower claim does just that.[5] He seems to argue that California's whistleblower protections are meant to serve public policy (specifically, public safety), so the arbitrator's flawed reasoning as to his whistleblower claim must necessarily violate public policy.

Peterson failed to preserve this argument in the district court. His mention of the public policy exception in this context was very brief. *See* R. at 195. Regardless, he provides no support for the idea that erroneous

---

[5] Peterson also repeatedly claims, without specifics, that the arbitrator's *entire* award violates public policy. We disregard these arguments as inadequately developed. *See United States v. Jones*, 768 F.3d 1096, 1105 (10th Cir. 2014) ("[P]erfunctory or cursory reference to issues unaccompanied by some effort at developed argument are inadequate to warrant consideration . . . .").

analysis of a cause of action intended to further public safety is automatically a violation of public policy that justifies overturning an arbitration award. Also, we have presumed the arbitrator found the original device to be safe, as Peterson contends, and we have no power to review that finding. We therefore reject Peterson's public policy argument.

**B**

**1**

Peterson argues the arbitrator manifestly disregarded the law because he found Peterson breached his employment contract by making a copy of Minerva's confidential information. Peterson says the employment contract only prohibits disclosure, not copying, so there was no breach.

Peterson did not make this argument to the district court until his reply brief in support of his motion to vacate the arbitration award, and the district court did not rule on it. "[W]hen a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." *FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999). We therefore do not address this argument further.

**2**

Peterson also argues the arbitrator manifestly disregarded the law by finding a breach of contract without evidence of damages. Peterson argues

11

the amount Minerva paid to its computer forensics expert cannot count as damages because it was a litigation expense. He does not tell us which state's law applies to this claim. The only decision he cites is *Tank Connection, LLC v. Haight*, 161 F. Supp. 3d 957 (D. Kan. 2016), which held that the plaintiff could not claim computer forensic consulting fees as damages for trade-secret misappropriation under Kansas law because the plaintiff was searching for evidence of misappropriation, not compensating for losses caused by the misappropriation, *see id.* at 960, 965–66.

If the arbitrator committed any error here, it again did not rise to "willful inattentiveness," *Ray*, 900 F.3d at 1243 (internal quotation marks omitted). We find no basis to vacate the award.

## IV

We affirm the district court's judgment. We deny Minerva's request for attorneys' fees and costs on appeal. Minerva did not put the fee-shifting portion of the employment contract into the record, so we cannot say whether we (as opposed to the arbitrator) have power to award fees and costs.

Entered for the Court

Richard E.N. Federico
Circuit Judge

12