FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 20, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

REUBEN JULIUS INGRAM, III, a/k/a
Rubin Ingram, a/k/a Michael Lucky, a/k/a
Reuben Perry, a/k/a Lucky,

    Defendant - Appellant.

No. 24-6164
(D.C. No. 5:23-CR-00389-SLP-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **McHUGH**, **KELLY**, and **FEDERICO**, Circuit Judges.

---

    Reuben Julius Ingram, III, received a 180-month prison sentence on drug and gun charges. This was a variance from the recommended Sentencing Guidelines range of 110 to 137 months. Ingram appeals the substantive reasonableness of his sentence. This court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.     BACKGROUND & PROCEDURAL HISTORY

In August 2023, Ingram's girlfriend, "K.S.," reported that Ingram had been violently threatening her at a gas station. These threats included pointing a gun at her, telling her he was going to kill her, and punching the window of her car with the gun. Police officers obtained surveillance footage from the gas station which confirmed that Ingram had pointed a firearm at K.S.

The officers learned that Ingram was staying at a motel, obtained a search warrant, and searched the motel room. The search revealed fentanyl and other narcotics, three loaded handguns, and a drum magazine designed for one of those handguns containing fifty-two rounds. These discoveries led to a federal indictment on various charges, and Ingram ultimately pleaded guilty to (i) being a felon in possession of three firearms, and (ii) possessing fentanyl with intent to distribute.

The presentence investigation report (PSR) calculated a total offense level of 25, which included a four-level increase because Ingram had "used or possessed any firearm or ammunition in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B). The PSR identified the "[]other felony offense" as threatening K.S. with a firearm.

As for criminal history, the PSR catalogued numerous convictions, including four convictions for threatening or battering an intimate partner. The PSR also catalogued numerous charges filed against Ingram that were later dropped, including three instances of threatening or battering an intimate partner. Two of those cases were dismissed because the victim failed to appear. Finally, the PSR described five

times that an intimate partner sought a protective order against Ingram based on domestic violence.

Ingram's criminal record put him in criminal history category VI, the highest category in the Sentencing Guidelines.  Combined with his total offense level of 25, the recommended sentencing range was 110 to 137 months.

Ingram's only objections to the PSR involved drug weight and quantity, although he acknowledged that those objections, even if accepted, would not change any of the PSR's calculations.  The government, for its part, had no objections to the PSR but requested an upward variance to 180 months in light of Ingram's extensive and violent criminal history.

At the sentencing hearing, Ingram explained to the district court that he possessed guns to protect his family, which prompted the court to ask why he needed three firearms, including one with a drum magazine containing more than fifty rounds.  Specifically as to that firearm, Ingram answered, "I like firearms of all kinds, and that was just a firearm that I came upon and I liked it and I purchased it." R. vol. 3 at 41.  But because the purchase had happened after Ingram had become a felon, the district court followed up by expressing its concern that Ingram's behavior was demonstrating a lack of respect for the law.  Ingram explained that he believed he had a Second Amendment right to possess firearms regardless of his status as a felon, and he also believed he had a right to carry firearms in Indian Country (Ingram is a member of the Muscogee Nation).  The district court again followed up by asking, "[W]hen you are finished with this term and you get out of prison, you still

3

think you have the right to possess a firearm?" *Id.* at 42.  Ingram responded by explaining what he intended to do after his prison term (*e.g.*, focus on his children, continue with businesses he was trying to start), but he did not answer the court's question about his intentions as to firearms.

Following the allocution with Ingram, the district court proceeded to explain its sentence.  It began by summarizing the 18 U.S.C. § 3553(a) factors it was required to consider.  Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines] . . . ;
>
> (5) any pertinent policy statement [from the Sentencing Commission] . . . ;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

4

(7) the need to provide restitution to any victims of the offense.

Having acknowledged these factors, the district court stated that "protection of the public, deterrence and just punishment" were highly relevant "looking at the circumstances of this case and Mr. Ingram's criminal history." R. vol. 3 at 45. Later in the sentencing hearing the district court added "respect for the law" as another important factor under the circumstances. *Id.* at 51.

The district court stated that the PSR revealed an "incredibly troubling" pattern of conduct. *Id.* at 45. The court noted that the offense conduct, as described in the PSR, involved violent threats with a brandished firearm. Moreover, the court noted that Ingram was not believable when he said he possessed firearms solely to protect his family, and he had evaded the court's question about whether he intended to continue possessing firearms after serving his sentence.

The court then stepped through Ingram's criminal history as described in the PSR and explained how the behaviors Ingram had exhibited leading to the instant offense—*i.e.*, violent threats made with a firearm in hand—are the same behaviors he has been exhibiting for years. Beginning with Ingram's first domestic abuse conviction in the year 2000, the court noted that the victim claimed Ingram had assaulted her many times but, until then, Ingram had forced her to drop charges. The court noted the similarities with Ingram's other domestic violence convictions, as well as similarities to charges that were dropped when the victim did not show up, which the court found consistent with the victim's statement as to his first conviction

5

that Ingram had previously forced her to drop charges. The court also took the various domestic violence protective orders into account, along with numerous convictions and charges related to drug trafficking and other crimes, plus eight misconduct sanctions imposed while Ingram had been serving previous sentences.

From all this, the court stated that "the advisory guideline calculation wholly fails to take into consideration and underestimates the criminal history and the nature and circumstances of this offense," so "a sentence above the advisory guideline calculation is in order." *Id.* at 51. The court then imposed a 180-month sentence.

## II. ANALYSIS

Ingram challenges the substantive reasonableness of his sentence. We review substantive reasonableness for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Because the district court varied upward from the recommended Guidelines range, we "may consider the extent of the deviation, but [we] must give due deference to the district court's decision that the § 3553(a) factors, on [the] whole, justify the extent of the variance." *Id.*

Ingram argues his sentence is substantively unreasonable because the district court produced an unwarranted sentencing disparity, *see* § 3553(a)(6), yet its only explicit acknowledgment of that sentencing factor was in passing while summarizing the § 3553(a) factors generally. The second part of Ingram's assertion is correct, but it does not amount to abuse of discretion.

To begin, we are not certain this argument goes to *substantive* reasonableness. Failure to consider a § 3553(a) factor is usually an attack on *procedural*

6

reasonableness. *See Gall*, 552 U.S. at 53–56 (examining a similar claim for procedural reasonableness). Regardless, the district court satisfies its duty to consider the possibility of unwarranted sentencing disparities when it correctly calculates and carefully considers the Guidelines range. *See id.* at 54 ("Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). No party disputes that the district court correctly calculated the Guidelines range, and the record is clear that the court carefully considered it, as shown by the record it made when explaining the need for a sentence above that range. We do not require more. *See United States v. Garcia*, 946 F.3d 1191, 1215 (10th Cir. 2020) (upholding an upward variance in the face of an unwarranted-disparities challenge because, among other reasons, the district court had correctly calculated and carefully considered the Guidelines range).

Ingram also points us to *United States v. Willie Walker*, 284 F.3d 1169 (10th Cir. 2002),[1] one of our decisions from the era when the Guidelines were mandatory, not advisory. Ingram emphasizes our statement from that case that "the Guidelines cap criminal history categories at level VI. Surely if the Guidelines envisioned increased punishment based on recidivism alone, higher criminal history categories would have been created." *Id.* at 1173. But *Willie Walker* was evaluating an upward departure, *see id.* at 1172, not a variance. *See United States v. Atencio*,

---

[1] We refer to this case as *Willie Walker* to avoid confusion with our *Amanda Walker* case, also discussed in this order and judgment.

476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (explaining that a departure is a non-Guidelines sentence arrived at through a process specified in the Guidelines themselves, while a variance is a non-Guidelines sentence arrived at through considering the § 3553(a) factors), *abrogated in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008).  Whatever force *Willie Walker* may still have in the departure context, our cases in the variance context show that a district court may reasonably conclude that the Guidelines sentence does not adequately reflect the defendant's criminal history as it bears on § 3553(a) factors such as deterrence.  *See, e.g.*, *United States v. Amanda Walker*, 74 F.4th 1163, 1203–04, 1205 (10th Cir. 2023) (upholding substantive reasonableness of an upward variance because, among other reasons, the defendant had previously been imprisoned for domestic abuse, which had not deterred the abusive behavior for which he had now been convicted; stating that "[d]istrict courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range" (brackets in original) (internal quotation marks omitted)), *cert. denied sub nom. Morrison v. United States*, 144 S. Ct. 1079 (2024); *United States v. Garcia*, 946 F.3d 1191, 1215 (10th Cir. 2020) ("[I]n light of Mr. Garcia's extensive and troubling criminal history, we conclude that the court reasonably believed that [his] criminal history was more serious than his guidelines range would indicate." (internal quotation marks omitted)).

Ingram further claims that national sentencing statistics support his unwarranted-disparity argument.  He says that the mean sentence for a firearm

8

offense in 2023 (the most recent year for which full-year statistics are available) was 49 months; and the mean sentence for drug trafficking was 82 months. If such sentences ran consecutively, they would amount to 131 months, which is meaningfully shorter than 180 months. Ingram acknowledges that he never presented these statistics to the district court. He says he offers them here only as "a real-world demonstration" of his argument that "a district court that gives outsized weight to criminal history and imposes a sentence significantly above the guidelines range will necessarily introduce sentencing disparities." Aplt. Reply Br. at 3.

The problem for Ingram here is twofold. First, the inquiry is not just disparities, but "*unwarranted* sentence disparities," § 3553(a)(6) (emphasis added). Second, a district court may decide that other § 3553(a) factors outweigh the need to avoid unwarranted disparities. *See Amanda Walker*, 74 F.4th at 1203 ("[T]he district court need not afford equal weight to each § 3553(a) factor, and we will defer on substantive-reasonableness review not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." (internal quotation marks omitted)); *United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir. 2010) ("[Section] 3553(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence.").

As Ingram correctly points out, we have stated that

> [w]hen a factor is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the

9

> range must articulate specifically the reasons that this
> particular defendant's situation is different from the
> ordinary situation covered by the guidelines calculation.

*Atencio*, 476 F.3d at 1107.  In Ingram's case, however, some of the criminal history the district court relied on was *not* included in the Guidelines calculation, either because it was too old or charges were dropped.[2]  In any event, the required explanation "need not be overly detailed," *id.* at 1106, and the district court's explanation in this case adequately articulated why the court had concluded that Ingram's situation was not "the ordinary situation covered by the guidelines calculation," *id.* at 1107 (internal quotation marks omitted).

Finally, Ingram analogizes this case to *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007).  There, the FBI had been covertly investigating the defendant based on seemingly credible statements he made to an exotic dancer about his desire to kidnap, rape, and murder young girls, but the investigation yielded nothing actionable in that regard.  *See id.* at 1245–48.  On the other hand, the investigation yielded evidence of dealing methamphetamine, for which the defendant was ultimately arrested and charged.  *Id.* at 1248.  A search of the defendant's apartment yielded drug-related evidence as well as photographs of missing-children posters and stories

---

[2] As to the district court's consideration of the alleged conduct underlying dropped charges, Ingram objects that this violates his Sixth Amendment right to a jury trial.  But he acknowledges our holding that "the defendant has no right to a jury determination of the facts that the [sentencing] judge deems relevant" when the judge exercises discretion to sentence a defendant within the statutory range, *United States v. Redcorn*, 528 F.3d 727, 746 (10th Cir. 2008) (internal quotation marks omitted).  He states that this holding forecloses his argument and he makes it only for preservation purposes.  We therefore do not address it further.

the defendant had written with plotlines involving raping young girls. *Id.* At sentencing, the advisory Guidelines range based on the drug offense was 120 to 135 months, *id.* at 1249, but the district court concluded that the uncharged conduct regarding the defendant's sexual and murderous desires demanded a large upward variance to 360 months, *id.* at 1250–51. The district court found that 360 months was reasonable because it would have been the low-end of the Guidelines range for soliciting murder of a person younger than age 12. *Id.* at 1251–52.

The defendant appealed his sentence as substantively unreasonable. "The question presented," we said, "[was] whether it was reasonable for the district court effectively to sentence [the defendant] as if he had been tried and convicted of attempted criminal sexual abuse or solicitation of murder, when his crime of conviction was sale of methamphetamine." *Id.* at 1253. Further refining the issue, we stated that the district court *may* vary upwards "based on evidence of past misconduct (such as police records in connection with arrests) that did not result in conviction," so the question "[was] not whether consideration of [the defendant's] unrelated, unadjudicated, and dissimilar actions was improper, but whether the weight given to those actions was excessive." *Id.* at 1259. Our answer was yes:

> Even if it is reasonable to conclude that a defendant who committed uncharged crimes or who presents a serious risk of committing future crimes deserves greater punishment than a similarly-situated defendant who committed no such other crimes and presents no such risk, it is quite another thing to conclude that the proper measure of that increase is the sentence that would be imposed had the defendant *actually been convicted* of those uncharged, unrelated crimes.

11

*Id.* We emphasized the point by stating that "a sentencing judge may not sentence a defendant for an entirely different, and far more serious, crime." *Id.* at 1260. We described that as "too absurd to contemplate: that a judge could sentence a man for attempted sexual abuse or solicitation of murder, even though he was convicted only of distribution of methamphetamine." *Id.* at 1261 (internal quotation marks omitted). We therefore vacated and remanded for resentencing. *Id.* at 1262.

Ingram says his case is like *Allen* because the district court sentenced him based on unproven accusations that "involved alleged conduct wholly unrelated to the events and charges of this case." Aplt. Opening Br. at 9. We disagree with the comparison. First, the district court did not rely entirely on uncharged conduct— Ingram already had an extensive history of convictions, including four convictions for violence toward an intimate partner. Second, his criminal history (both convictions and charges that were dropped) and the record of domestic violence restraining orders were not "wholly unrelated to the events and charges of this case." *Id.* The district court was within its discretion to find a longstanding pattern of violent threats toward intimate partners, including violent threats involving firearms he was not allowed to possess due to his previous convictions.[3]

---

[3] In his reply brief, Ingram backs away from saying that he had been sentenced for "conduct wholly unrelated to the *events and charges* of this case," Aplt. Opening Br. at 9 (emphasis added), and instead focuses on the charges alone, claiming the record shows no relation between "allegations of domestic violence" and "being a felon in possession of a firearm or possessing fentanyl with intent to distribute," Aplt. Reply Br. at 4. Ingram seems to be suggesting that *Allen* requires something like the categorical approach used in other parts of sentencing law, *i.e.*, "focus[ing] solely on whether the elements of the crime of conviction sufficiently match the

## III.    CONCLUSION

"[T]here are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing, a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations . . . ." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (internal quotation marks omitted). In this case, a 180-month sentence "falls within the realm of these rationally available choices," *id.*, in light of the § 3553(a) factors the district court found most relevant, namely, protecting the public, deterring future crimes, providing just punishment, and promoting respect for the law. We therefore affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

elements of [some other crime], while ignoring the particular facts of the case," *Mathis v. United States*, 579 U.S. 500, 504 (2016). Assuming the argument is not waived as untimely, it *is* waived as insufficiently developed. *Allen* nowhere establishes such a test and Ingram offers no other authority that the events underlying a conviction (here, for example, Ingram's violent threats with gun in hand, eventually leading to a felon-in-possession charge) may not factor into the district court's evaluation of the defendant's criminal history as the court determines an appropriate sentence. *See United States v. Jones*, 768 F.3d 1096, 1105 (10th Cir. 2014) ("[W]e generally will not address issues not supported by citation to legal authority.").